**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JONATHAN MOHR, for himself and others similarly situated, | Case No.  2:23-cv-00731 |
| Plaintiffs, | **BRIEF IN SUPPORT OF MOTION TO REMAND** |
| v. | |
| THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND.................................................................................. 2

LEGAL STANDARD............................................................................................ 3

ARGUMENT ........................................................................................................ 5

I.      DEFENDANT DOES NOT ACT UNDER A FEDERAL OFFICER.............................. 5

II.     THERE IS NO CAUSAL CONNECTION WITH PLAINTIFF'S CLAIMS ................. 13

CONCLUSION.................................................................................................... 13

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*City of Hoboken v. Exxon Mobil Corp.*,
  558 F. Supp. 3d 191 (D.N.J. 2021) ........................................................ 13

*Davis v. Wells Fargo*,
  824 F.3d 333 (3d Cir. 2016) ................................................................. 4

*Doe I v. UPMC*,
  2020 WL 4381675 (W.D. Pa. July 31, 2020) ................................... 10, 11

*Doe v. ProMedica Health Sys., Inc.*,
  2020 WL 7705627 (N.D. Ohio Oct. 30, 2020) ...................................... 10

*Doe, I v. BJC Health Sys.*,
  2023 WL 369427 (E.D. Mo. Jan. 10, 2023) ...................................... 2, 12

*Heard v. Torrance Memorial Medical Center*,
  2023 WL 2475544 (C.D. Cal. Mar. 13, 2023) .................................. 1, 12

*In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Philadelphia*,
  790 F.3d 457 (3d Cir. 2015) ......................................................... passim

*Jefferson Cnty., Ala. v. Acker*,
  527 U.S. 423 (1999) ........................................................................... 13

*Maglioli v. All. HC Holdings LLC*,
  16 F.4th 393 (3d Cir. 2021) ........................................................ 6, 8, 9

*Panther Brands, LLC v. Indy Racing League, LLC*,
  827 F.3d 586 (7th Cir. 2016) ........................................................... 7, 9

*Papp v. Fore-Kast Sales Co.*,
  842 F.3d 805 (3d Cir. 2016) ....................................................... 3, 4, 11

*Petruska v. Gannon Univ.*,
  462 F.3d 294 (3d Cir. 2006) .............................................................. 4

*Quinto v. Regents of Univ. of California*,
  2023 WL 1448050 (N.D. Cal. Feb. 1, 2023) ................................... 1, 12

*Samuel-Bassett v. KIA Motors Am., Inc.*,
  357 F.3d 392 (3d Cir. 2004) ............................................................... 3

*Watson v. Philip Morris Cos., Inc.,*
   551 U.S. 142 (2007) ................................................................................................ passim

**STATUTES**

28 U.S.C. § 1442(a)(1) .................................................................................................... 1, 4

28 U.S.C. § 1446 .................................................................................................................. 3

28 U.S.C. § 1447(c) ............................................................................................................. 3

**RULES**

Fed. R. Civ. P. 11 ................................................................................................................. 3

Fed. R. Civ. P. 12(b)(1) ....................................................................................................... 3

**OTHER AUTHORITIES**

H.R. Rep. 112-17 ................................................................................................................. 7

**INTRODUCTION**

In this action, Plaintiff Jonathan Mohr, on behalf of himself and all others similarly situated ("Plaintiff"), brings a state-law cause of action against Defendant The Trustees of the University of Pennsylvania ("Defendant"), which operates, controls, and manages the Hospital of the University of Pennsylvania Health System ("Penn Medicine").  Plaintiff alleges that "Defendant aids, employs, agrees, and conspires with Facebook/Meta to intercept communications sent and received by Plaintiff and Class Members, including communications containing protected medical information."  Plaintiff's Complaint ("Compl.") (ECF No. 1, Exhibit A) ¶ 2.  Specifically, Plaintiff alleges that "[b]ecause Defendant utilizes the Facebook Tracking Pixel, Facebook's embedded code, written in JavaScript, sends secret instructions back to the individual's browser, without alerting the individual that this is happening.  Facebook causes the browser to secretly and concurrently duplicate the communication with the Penn Medicine website at issue, transmitting it to Facebook's servers, alongside additional information that transcribes the communication's content and the individual's identity."  Compl., ¶ 29.

Defendant removed this action pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1), from the Court of Common Pleas of Philadelphia County, on February 24, 2023.  *See* Notice of Removal (ECF No. 1) ("NOR").  However, removal is improper.  Defendant has not met its burden to establish: (1) that it is "acting under" the United States, its agencies, or its officers, or (2) that Plaintiff's claims against Defendant are "for, or relating to" an act under color of federal office.

Indeed, federal courts across the country have recently granted similar motions.  *See Heard v. Torrance Memorial Medical Center*, 2023 WL 2475544, at *3 (C.D. Cal. Mar. 13, 2023) (Fischer, J.); *Quinto v. Regents of Univ. of California*, 2023 WL 1448050, at *3 (N.D. Cal. Feb. 1,

2023); *Doe, I v. BJC Health Sys.*, 2023 WL 369427, at *4 (E.D. Mo. Jan. 10, 2023). This case should follow suit and also be remanded.

## FACTUAL BACKGROUND

In 2009, Congress, as part of the The American Recovery & Reinvestment Act of 2009, passed the Health Information Technology for Economic and Clinical Health Act ("HITECH Act").[1] The HITECH Act, in turn, created the Office of the National Coordinator for Health Information Technology ("ONC"), which is a staff division of the U.S. Department of Health and Human Services ("DHHS").[2] The HITECH Act provided funding to DHHS for a number of initiatives, including the Medicare and Medicaid Electronic Health Record ("HER") Incentive Programs under which some health professionals and hospitals receive incentive payments for adopting and using EHR technology.[3] The Centers of Medicare and Medicaid Services ("CMS") are responsible for overseeing incentive payments to the private actors who are "Meaningful Users" of EHR technology. CMS explained that "[t]hrough the Medicare and Medicaid EHR incentive programs, CMS *hopes* to expand the meaningful use of certified EHR technology." (Emphasis added).[4] In short, the incentive program is designed to fulfill CMS' aspirations of expanding EHR technology through voluntary participation by private actors in adopting EHR technology. None of the private actors are government contractors or officials, they merely voluntarily adopt the EHR technology to receive financial compensation in the form of incentive payments under the rubric established by DHHS and CMS.

---

[1] https://www.cms.gov/Medicare/Compliance-and-Audits/Part-A-Cost-Report-Audit-and-Reimbursement/HITECH-Audits (last visited 3/8/23).

[2] https://www.hhs.gov/sites/default/files/combined-onc.pdf (last visited 3/8/23).

[3] *Id.*

[4] https://www.cms.gov/newsroom/fact-sheets/cms-finalizes-definition-meaningful-use-certified-electronic-health-records-ehr-technology (last visited 3/8/23).

Defendant is a private actor that uses EHR technology to receive an incentive payment from CMS.  NOR ¶ 29.  As it relates to the subject of this action, Defendant is not a government contractor, but is a voluntary participant in the Meaningful Use Program.  Defendant admits that it "uses tracking technologies, such as cookies and Facebook pixels" to track user activity on its webpages.  *Id.* ¶ 13.  Such tracking activity, illegal under Pennsylvania law, is not required as part of the Meaningful Use Program.

## LEGAL STANDARD

A defendant seeking removal must "file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action."  28 U.S.C. § 1446.  The notice of removal "must allege the underlying facts supporting each of the requirements for removal jurisdiction."  *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Philadelphia*, 790 F.3d 457, 466 (3d Cir. 2015), *as amended* (June 16, 2015) ("*In re Commonwealth*").

The plaintiff may move to remand the case at any time before final judgment if the basis for remand is that the district court lacks subject matter jurisdiction.  28 U.S.C. § 1447(c).  A motion for remand is analyzed under the same standards as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 811 (3d Cir. 2016) ("Because a motion to remand shares an essentially identical procedural posture with a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), it is properly evaluated using the same analytical approach.").  Defendant carries the burden to establish that the district court has subject matter jurisdiction over the dispute.  *Samuel-Bassett v.*

3

*KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004) ("The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court."). Plaintiff's challenge to subject matter jurisdiction may be either a facial attack or a factual attack. *Papp*, 842 F.3d at 811. A facial attack, relevant here, "challenges subject matter jurisdiction without disputing the facts alleged in the [Notice of Removal], and it requires the court to 'consider the allegations of the [Notice of Removal] as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006)).

Defendant removed this action based on the federal officer removal statute, which, as relevant here, applies to the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office . . ." 28 U.S.C. § 1442. The purpose of the federal officer removal statute is to "protect the Federal Government from the interference with its operations that would ensue were a State able, for example, to arrest and bring to trial in a State court for an alleged offense against the law of the State, officers and agents of the Federal Government acting within the scope of their authority." *In re Commonwealth*, 790 F.3d at 466 (quoting *Watson v. Philip Morris Cos., Inc.,* 551 U.S. 142, 150 (2007)).

The federal officer removal statute is an exception to the well-pleaded complaint rule requiring the plaintiff's complaint to establish that the case arises under federal law; instead, under the federal officer removal statute, "a colorable federal defense is sufficient to confer federal jurisdiction." *Id.* While the federal officer removal statute is to be "broadly construed," *see id.* at 466-67, the Supreme Court has "also emphasized that 'broad language is not limitless.'" *Watson*, 551 U.S. at 147. "And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Id.*

The Third Circuit has distilled the requirements of the federal officer removal statute into four elements. *Id.* at 467. Specifically, Defendant must establish: (1) it is a "person" within the meaning of the statute; (2) Plaintiff's claims are based upon Defendant's conduct "acting under" the United States, its agencies, or its officers; (3) Plaintiff's claims against Defendant are "for, or relating to" an act under color of federal office; and (4) Defendant raises a colorable federal defense to Plaintiff's claims. *Id.*

## ARGUMENT

Defendant claims that by participating in the voluntary incentive program, it is somehow "acting under United States agencies," namely DHHS and CMS. NOR ¶ 7. Defendant also argues that even though use of tracking cookies and Facebook pixels are not required for participation in the Meaningful Use Program, that somehow use of such technology is "connected" with Defendant's "effort to meet federal program criteria." NOR ¶ 45. Both arguments are wrong.

First, Defendant's argument fails because it has not established that it is "acting under" the United States, its agencies, or its officers by participating in a voluntary incentive program. Second, Defendant has not established that Plaintiff's claims against Defendant are "for, or relating to" an act under color of federal office because Defendant is not required to engage in the challenged conduct even if it were acting under a federal officer, which it is not. Because Defendant fails to meet each element to establish entitlement to removal under the federal officer removal statute, this action should be remanded to the Court of Common Pleas of Philadelphia County, Pennsylvania.

## I.      DEFENDANT DOES NOT ACT UNDER A FEDERAL OFFICER

Defendant cannot establish that it is "acting under" a federal agency merely by participating in a voluntary incentive program because such a relationship with the government falls short of

the sort of relationship recognized by the Third Circuit as sufficient to establish that a private entity is "acting under" a federal officer.

The Third Circuit has explained that the "phrase 'acting under' is broad . . . [b]ut the phrase is not boundless." *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 404 (3d Cir. 2021). Specifically, "[m]erely complying with federal laws and regulations is not 'acting under' a federal officer for purposes of federal-officer removal." *Id.* "Even a firm subject to detailed regulations and whose 'activities are highly supervised and monitored' is not 'acting under' a federal officer." *Id.* "Precedent and statutory purpose . . . make clear that the private person's 'acting under' must involve an effort to *assist,* or to help *carry out,* the federal superior's duties or tasks." *Watson*, 551 U.S. at 143 (emphasis in original).

Here, Defendant falls short of meeting this standard.  Defendant insists that it is "acting under" DHHS and CMS because said agencies have "a long-standing policy of promoting wider availability of Electronic Health Records . . ., such as those made available by Penn Medicine at mypennmedicine.org."  NOR ¶¶ 7-8.  But voluntary cooperation with government objectives is insufficient to establish that an entity is "acting under" a federal officer.  As discussed below, this scenario falls outside, and short of, the normal scenarios in which a private entity is "acting under" a federal officer.

First, the Third Circuit has explained that the "classic" example of "acting under" a federal officer is an agency relationship, such as a government contractor performing a contractual service for the federal government.  *See Maglioli*, 16 F.4th at 405 ("Government contractors are a classic example. A private contractor acts under a federal officer when it 'help[s] the Government to produce an item that it needs.'") (quoting *Watson*, 551 U.S. at 153).  Here, Defendant is not a government contractor acting under the supervision and direction of a federal superior to produce

an item needed by the government.  Instead, Defendant is acting *voluntarily* to permit patients

access to health records through its web pages and patient portal to fulfill the aspirational goals of

CMS, and is receiving incentive payments from the federal government for doing so.  *See* NOR ¶¶

3, 10.  This is insufficient because "[r]emoval is allowed only when the acts of Federal defendants

are essentially ordered or demanded by Federal authority."  H.R. Rep. 112-17, pt. 1, at 3 (2011).

Here, Defendant has failed to establish, and indeed cannot establish, that it was "essentially ordered

or demanded by Federal authority" to implement the Facebook Tracking Pixel (or even to comply

with the Meaningful Use Program as a general matter).  Instead, Defendant engaged in such

conduct entirely of its own volition.  *See* NOR ¶ 10 ("The federal government has *incentivized*

eligible providers . . . to assist in meeting its objectives . . .") (emphasis added); ¶ 29 (describing

payments as "financial incentives" as opposed to payments for contractual work).  In sum,

Defendant has failed to demonstrate that it was acting at the direction of the federal government

because participation in CMS' Meaningful Use program is optional—not mandated, and therefore

fails "to transform a private entity into a federal officer."  *See Panther Brands, LLC v. Indy Racing

League, LLC*, 827 F.3d 586, 590 (7th Cir. 2016).

　　　　Defendant argues that it must meet certain criteria in order to receive full Medicare

reimbursement, which include having an interoperable patient portal.  NOR ¶¶ 29, 35, 41.

However, CMS' final rule concerning the use of certified electronic health record technology

(CEHRT), published in 2017, underscores the voluntary nature of Defendant's conduct:

> Finally, we appreciate the recommendation on the inclusion of multi-lingual and
> low-literacy patient portals to provide and support patient education for a wider
> range of patients. We note that it is a priority of CMS and ONC to continue to foster
> interoperability between assistive technologies, portals such as those recommended
> by the commenters, applications leveraging multi-media supports, and other
> accessible tools and CEHRT. Unfortunately, while we strongly encourage adoption
> of these resources and support the development of standards and testing, we believe
> the requirement of these tools for all providers in the Medicare and Medicaid EHR

Incentive Programs is premature based on the current availability of such interoperable resources in the EHR marketplace.[5]

Therefore, unlike an agent whose own judgment is subordinate and subsidiary to the discretion of a principal, Defendant acted in a wholly elective manner in carrying out the conduct that is here at issue. Critically, there is *nothing* to suggest that Defendant was ordered by the government to implement the Facebook Tracking Pixel on the portal at issue and transmit highly sensitive patient information to Facebook without patient knowledge or consent. And that is the conduct at issue for which Defendant is called to answer here.

At its core, Defendant's argument is that it is entitled to federal officer status because, in seeking full reimbursement through CMS' Meaningful Use Program, it is subject to a highly detailed regulatory scheme. *See, e.g.,* NOR ¶¶ 29-35. But the Supreme Court and the Third Circuit have made clear that "intense regulation . . . alone does not mean [Defendant] w[as] 'acting under' federal officers." *Maglioli*, 16 F.4th at 405; *Watson*, 551 U.S. at 153 ("The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored.").

Defendant, in creating its patient health portal, sought to secure full Medicare reimbursement through CMS' Meaningful Use Program. NOR ¶ 41. The Meaningful Use Program is, by definition, a "rule"[6] propounded by a "federal official" (CMS is a federal agency

---

[5] https://www.federalregister.gov/documents/2015/10/16/2015-25595/medicare-and-medicaid-programs-electronic-health-record-incentive-program-stage-3-and-modifications.

[6] https://www.federalregister.gov/documents/2015/10/16/2015-25595/medicare-and-medicaid-programs-electronic-health-record-incentive-program-stage-3-and-modifications.

that is a part of DHHS).[7][8]   While the Meaningful Use Program might be highly detailed, Defendant's compliance with it, given the foregoing, does not by itself fall within the scope of the statutory phrase "acting under" a federal official.   Nowhere does Defendant assert that CMS maintained direct oversight over, managed, or otherwise played any role in the process of building Defendant's patient portal.  In other words, Defendant was afforded great latitude in its relationship with CMS, which was altogether impersonal and noninterventionist in nature.

Second, Defendant is not acting under delegated authority from a federal official.  *In re Commonwealth*, 790 F.3d at 469 ("The Federal Community Defender is a non-profit entity created through the Criminal Justice Act that is delegated the authority to provide representation under the CJA and § 3599."); *Maglioli*, 16 F.4th at 405 (denying federal officer removal where the defendant was "not delegated federal authority"); *see also Panther Brands, LLC*, 827 F.3d at 590 ("Neither did the Guard delegate any rulemaking authority to Docupak, which we have suggested might make a difference.").  Here, the federal government has established a voluntary program through DHHS that allows private providers to receive incentive funds in exchange for providing electronic access to patient records but does not delegate any authority or even compel any activity on the part of the private actor participants, including Defendant.

Third, Defendant did not assist a federal officer in fulfilling "basic governmental tasks" that "the Government itself would have had to perform" if it had not contracted with a private firm. *Watson*, 551 U.S. at 153-54.  The creation of patient portals, while conducive to CMS' mission,

---

[7] https://www.healthcare.gov/glossary/centers-for-medicare-and-medicaid-services/#:~:text=The%20federal%20agency%20that%20runs,information%2C%20visit%20cms.gov.

[8] https://www.cms.gov/About-CMS/About-CMS.

which is "to serve Medicare & Medicaid beneficiaries[,]"[9] is not indispensable to CMS' fulfillment of its basic governmental tasks.  Indeed, CMS itself has stated that it "*hopes* to expand the meaningful use of certified EHR technology,"[10] suggesting an aspirational goal rather than a required item.  It is instructive that Defendant does not state that CMS' Meaningful Use Program **compels** the creation of patient portals, particularly those embedded with the Facebook Tracking Pixel that transmits highly sensitive patient information to Facebook.

Fourth, Defendant's activity is not so closely related to the government's implementation of its federal duties that the private person faces "a significant risk of state-court 'prejudice.'" *Watson*, 551 U.S. at 152.  As mentioned in the preceding paragraph, the government, here, was not implementing any federal "duty."  It was provisioning a monetary incentive – full Medicare reimbursement – to induce healthcare providers' furtherance of one of its policy ambitions (*i.e.*, the creation of patient portals).

Defendant is also not susceptible to the sort of state-court prejudice that a government employee might face.  Its autonomous creation of a *private* patient health portal does not typify the sort of conduct that, at least on first impression, one would tend to ascribe to such a worker.

Defendant relies on the non-binding decision in *Doe I v. UPMC*, 2020 WL 4381675 (W.D. Pa. July 31, 2020)[11] to support its argument that it is "acting under" United States agencies.  There, the court held that the "fact that the government offers payment in exchange for UPMC's voluntary

---

[9] https://qsep.cms.gov/BHFS/M1/M1S1_180.aspx#:~:text=CMS's%20mission%20is%20to%20serve,care%20providers%20who%20serve%20them.

[10] https://www.cms.gov/newsroom/fact-sheets/cms-finalizes-definition-meaningful-use-certified-electronic-health-records-ehr-technology (last visited 3/8/23).

[11] Defendant also references the non-binding decision in *Doe v. ProMedica Health Sys., Inc.*, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020), which simply adopts, without additional analysis, the reasoning of the *UPMC* court.

participation in implementing a nationwide EHR network shows the relationship between UPMC and DHHS is less like the regulator-regulated relationship in *Watson* and more like the government contractor relationship in *Papp*." *Id.* at 6. Respectfully, the court's decision in *UPMC* is incorrect.

For the reasons stated above, the relationship between DHHS and Defendant is not like a "government contractor" relationship because Defendant's participation in the program is fully voluntary and Defendant has no compelled obligations to the government, contractual or otherwise. These facts clearly differentiate this case from *Papp*, wherein the plaintiff's allegations were directed at "actions [the defendant] took while working under a federal contract to produce an item the government needed, to wit, a military aircraft, and that the government otherwise would have been forced to produce on its own." 842 F.3d at 813. In *Papp*, the defendant was a government contractor producing an item for the government under its direction and supervision; here, by contrast, Defendant is a voluntary actor that may choose or not choose to meet government benchmarks to receive an incentive payment.

Other courts, critical of the reasoning in *UPMC*, have recognized that voluntary incentive payments are insufficient to establish that an entity is "acting under" a federal official. As one court, analyzing an identical scenario to the one presented here, explained:

> I decline to follow the *UPMC* court's analysis as I am not persuaded that BJC's receipt of statutory incentive payments means that it is "acting under" a federal officer for purposes of the federal officer removal statute. BJC is not assisting or helping a federal officer carry out her duties or tasks by creating a website and patient portal to allow patients online access to medical information (and allegedly transmitting their private data to third parties without their knowledge or consent). Despite the federal government's expressed desire to encourage "the implementation of interoperable health information technology infrastructure," the statute neither authorizes nor obligates the federal government to create such an infrastructure itself. "[W]hile the federal government may have an interest in ensuring [an interoperable health information technology infrastructure], it is typically not the duty or task of the federal

government to [provide patients online access to medical information]." . . . Therefore, it cannot be said that BJC's creation of a website and online patient portal fulfills a "basic government task" that the federal government itself would otherwise be required to carry out. . .

*Doe, I v. BJC Health Sys.*, 2023 WL 369427, at *4 (E.D. Mo. Jan. 10, 2023).

The *BJC* court also correctly rejected the *UPMC* court's likening of the voluntary incentive scheme to that of a government contractor:

> *Neither the UPMC court nor BJC have explained how voluntary participation in a government program somehow brings BJC closer to "acting under" a federal officer than other private entities subject to mandatory regulation by the government, and I can discern no meaningful distinction between the two in this instance.* As noted by plaintiffs, the Promoting Interoperability program does not require its voluntary participants to create online patient access to medical information to receive incentive payments, as many of the program's incentive payments are directed at areas that do not even relate to electronic health records. … *While the government may have encouraged healthcare providers such as BJC to participate in the Promoting Interoperability program by offering incentive payments, there is no evidence that it directed BJC to do so or that it required the creation of an online patient portal (especially one designed as alleged) as part of its participation in the program.* Under these facts, BJC has failed to demonstrate the type of "subjection, guidance, or control" necessary to establish federal officer removal jurisdiction in this case.

*Id.* (Emphasis added); *see also Quinto v. Regents of Univ. of California*, 2023 WL 1448050, at *3 (N.D. Cal. Feb. 1, 2023) (rejecting federal officer removal in an identical case and explaining that *UPMC* and *ProMedica* "entailed an overly broad interpretation of what it means to assist a federal superior with its tasks or duties, which would permit removal to federal court in circumstances far beyond anything Congress intended.") (Citation omitted); *Heard v. Torrance Memorial Medical Center*, 2023 WL 2475544, at *3 (C.D. Cal. Mar. 13, 2023) (granting motion to remand under nearly identical circumstances).

This Court should follow the sound reasoning of the courts in *BJC*, *Quinto*, and *Heard* and reject the overly broad application of the federal officer removal statute adopted by the court in *UPMC* and advocated by Defendant here.

## II.     THERE IS NO CAUSAL CONNECTION WITH PLAINTIFF'S CLAIMS

The so-called "causation element" requires that Defendant establish that Plaintiff's claims "concern acts 'for or related to'" Defendant's federal office. *In re Commonwealth*, 790 F.3d at 470. To satisfy this requirement, Defendant "must show a nexus, a causal connection between the charged conduct and asserted official authority." *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999). "[I]t is sufficient for there to be a 'connection' or 'association' between the act in question and the federal office." *In re Commonwealth*, 790 F.3d at 471. Given the foregoing, Defendant was never "directed" by anyone, let alone a federal officer, to create its patient portal. *See City of Hoboken v. Exxon Mobil Corp.*, 558 F. Supp. 3d 191, 207 (D.N.J. 2021), *aff'd sub nom. City of Hoboken v. Chevron Corp.*, 45 F.4th 699 (3d Cir. 2022) (denying federal officer removal where the defendants did "not claim that any federal officer directed them to engage in the alleged misinformation campaign"). The "charged conduct" in the instant matter – Defendant's having implemented the Facebook Tracking Pixel to transmit highly sensitive patient information to Facebook in violation of Pennsylvania law – was certainly not "directed" by a federal officer. Defendant offers no evidence to the contrary. Therefore, it cannot be disputed that Defendant's use of the Facebook Tracking Pixel is unrelated to any federal office, even assuming one existed (which it does not).

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion to remand this action to the Court of Common Pleas of Philadelphia County, Pennsylvania.

Dated:  March 27, 2023                          Respectfully submitted,

                                                By: *Steven A. Schwartz*
                                                **CHIMICLES SCHWARTZ KRINER**
                                                **& DONALDSON-SMITH LLP**
                                                Steven A. Schwartz (PA I.D. No. 50579)
                                                361 W. Lancaster Avenue
                                                Haverford, PA 19041
                                                Tel: (610) 642-8500
                                                Fax: (610) 649-3633
                                                E-Mail: sas@chimicles.com

                                                **BURSOR & FISHER, P.A.**
                                                Joshua D. Arisohn*
                                                Philip L. Fraietta*
                                                888 Seventh Avenue
                                                New York, NY 10019
                                                Tel: (646) 837-7150
                                                Fax: (212) 989-9163
                                                E-Mail: jarisohn@bursor.com
                                                        pfraietta@bursor.com

                                                **BURSOR & FISHER, P.A.**
                                                Christopher R. Reilly*
                                                701 Brickell Ave., Suite 1420
                                                Miami, FL 33131-2800
                                                Telephone: (305) 330-5512
                                                Facsimile: (305) 676-9006
                                                E-Mail: creilly@bursor.com

                                                **DRURY LEGAL, LLC**
                                                Scott R. Drury*
                                                6 Carriage Lane
                                                Highwood, Illinois 60040
                                                Telephone: (312) 358-8225
                                                E-Mail: scott@drurylegal.com

                                                *Pro Hac Vice Application Forthcoming*

                                                *Attorneys for Plaintiff and the Putative Class*

14