PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1924
_____

JOHNATHON MOHR,
for himself and others similarly situated

v.

TRUSTEES OF THE
UNIVERSITY OF PENNSYLVANIA,
                                                      Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-23-cv-00731)
District Judge: Honorable Chad F. Kenney
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
February 1, 2024
_____

Before: KRAUSE, PORTER, and CHUNG
*Circuit Judges*.

(Filed: February 21, 2024)

_____

Adam R. Pulver
Allison M. Zieve
Public Citizen Litigation Group
1600 20th St. NW
Washington, DC 20009

*Counsel for Appellee*

Paul J. Bond
Eric Yoon
Holland & Knight LLP
1650 Market St.
One Liberty Place, Suite 3300
Philadelphia, PA 19103

Mark S. Melodia
Holland & Knight LLP
31 W. 52nd St., 12th Floor
New York, NY 10019

*Counsel for Appellant*

_____

OPINION OF THE COURT

_____

2

PORTER, *Circuit Judge*.

Plaintiffs filed a putative class action in state court against the Trustees of the University of Pennsylvania (Penn), which controls and operates the Hospital of the University of Pennsylvania Health System (Penn Medicine). Using mobile devices or desktop computers, patients can access and provide information to Penn Medicine. Plaintiffs allege that Penn Medicine shares patients' identities, sensitive health information, and online activity from its patient portals with Facebook in violation of Pennsylvania privacy law. Penn removed the case to federal court, invoking the federal-officer removal statute, 28 U.S.C. § 1442(a)(1). It argued that, in operating Penn Medicine's patient portals, it was "acting under" the federal government. The District Court rejected this argument and remanded the case to state court. We will affirm.

I

In 2009, Congress enacted the Health Information Technology for Economic and Clinical Health Act (HITECH Act). Pub. L. No. 111–5, §§ 13001–13424, 123 Stat. 115, 226–79 (2009). Its goal was to encourage healthcare providers to adopt and use health information technology, such as electronic health records (EHR). *See* 42 U.S.C. § 300jj-11(b). In part, the HITECH Act directed the Department of Health and Human Services (HHS) to make incentive payments to any Medicare-participating provider that is a "meaningful EHR user." 42 U.S.C. § 1395w-4(o)(1)(A)(i). Beginning in 2015, the law also instructed HHS to reduce Medicare reimbursements to any Medicare-participating provider that is "not a meaningful EHR user." 42 U.S.C. § 1395w-4(a)(7)(A)(i).

3

In 2010, the Centers for Medicare and Medicaid Services (CMS), an agency within HHS, promulgated regulations to implement the HITECH Act and created a program called the Meaningful Use Program (the Program).[1] 42 C.F.R. §§ 495.2–495.110. Under the Program, CMS created certain objectives and measures that providers must meet in order to qualify as a "meaningful EHR user" and thus receive incentive payments and avoid reductions in Medicare reimbursements. 42 C.F.R. §§ 495.20–495.24. For example, one objective is whether a provider uses health information technology to "provide[] patients . . . with timely electronic access to their health information," which participating providers often accomplish through the use of an online patient portal. 42 C.F.R. § 495.24(d)(5)(i)(A).

Penn Medicine has operated an online patient portal since 2008. Starting in 2011, it began receiving incentive payments from the federal government for qualifying as a "meaningful EHR user" based on its patient portal meeting certain objectives and measures under the Program. And starting in 2015, Penn Medicine began avoiding any reduction in Medicare reimbursements by continuing to qualify as a "meaningful EHR user."

In January 2023, Plaintiffs filed a putative class action against Penn in the Court of Common Pleas of Philadelphia County. According to the Plaintiffs, Penn Medicine's patient portal surreptitiously allows Facebook's Tracking Pixel

---

[1] The Program is now called the Promoting Interoperability Program. *See* 42 C.F.R. § 495.4.

software to access and collect confidential patient information from Penn Medicine's patient portal and transfer it to Facebook's servers. Facebook then allegedly processes and analyzes the patient data for targeted advertising. Plaintiffs assert that this transfer of confidential information to Facebook violates Pennsylvania privacy law.

In February 2023, Penn removed the case to federal court, invoking the federal-officer removal statute as a basis for jurisdiction. 28 U.S.C. § 1442(a)(1). It argued that, because Penn operates Penn Medicine's patient portal to receive incentive payments under the Program and avoid reductions in Medicare reimbursements, it is "acting under" the federal government. Plaintiffs filed a motion to remand for lack of subject-matter jurisdiction, which the District Court granted. Penn appealed.

II

The District Court had the obligation and power to determine its own jurisdiction. *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012). We have jurisdiction to review the District Court's remand order under 28 U.S.C. §§ 1291 and 1447(d).

We review the District Court's decision to remand for lack of subject-matter jurisdiction de novo. *Maglioli v. All. HC Holdings LLC*, 16 F.4th 393, 403 (3d Cir. 2021). Like the District Court, we construe Plaintiffs' motion to remand as a facial challenge to the District Court's subject-matter jurisdiction because Plaintiffs did not dispute the facts alleged in Penn's notice of removal. *Papp v. Fore-Kast Sales Co.*, 842

5

F.3d 805, 811 (3d Cir. 2016) (explaining the differences between facial and factual challenges in the context of a motion to remand). Thus, we must accept the factual allegations in Penn's notice of removal as true and construe them in the light most favorable to Penn. *Id.*

III

28 U.S.C. § 1442(a)(1) "permits certain officers of the United States to remove actions to federal court." *Maglioli*, 16 F.4th at 404. It also allows "private persons who lawfully assist [a] federal officer in the performance of his official duty" to remove a case to federal court. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 151 (2007) (internal quotation marks and quoted source omitted). The "central aim" of § 1442(a)(1) is to "protect[] officers of the federal government from interference by litigation in state court while those officers are trying to carry out their duties." *Papp*, 842 F.3d at 811.

"To remove a case under § 1442(a)(1), a defendant must meet four requirements: (1) the defendant must be a 'person' within the meaning of the statute; (2) the plaintiff's claims must be based upon the defendant 'acting under' the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant must be 'for or relating to' an act under color of federal office; and (4) the defendant must raise a colorable federal defense to the plaintiff's claims." *Maglioli*, 16 F.4th at 404 (quoting § 1442(a)(1)). The defendant bears the burden of establishing that each requirement is met. *Avenatti v.*

*Fox News Network LLC*, 41 F.4th 125, 130 (3d Cir. 2022). This case turns on the second, "acting under" requirement.[2]

A

To satisfy the "acting under" requirement, the defendant must show that the plaintiff's allegations "involve conduct that occurred when [the defendant] was 'acting under' the direction of a federal officer or agency." *Papp*, 842 F.3d at 813. The defendant is not "required to [show] that the complained-of conduct *itself* was at the behest of [the federal government]." *In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 470 (3d Cir. 2015). It is "sufficient . . . that the [plaintiff's] allegations are directed at the relationship between" the federal government and the defendant. *Id.*

The "acting under" requirement is to be liberally applied in favor of removal, but "[it] is not boundless." *Maglioli*, 16 F.4th at 404. At bottom, a private party is acting under the federal government when it is "involve[d] [in] an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." *Watson*, 551 U.S. at 152. This "special relationship" arises when the federal government "delegat[es] . . . legal authority" to the private party to "undertake" a duty or task "on the Government['s] . . . behalf." *Id.* at 156–57. In other words, "[t]he [private] party does the business of the

---

[2] Plaintiffs argue that Penn also fails the third and fourth requirements. Because we conclude that Penn does not satisfy the second requirement and therefore is not entitled to removal, we decline to address the other requirements.

7

federal government and not merely its own." *Doe v. BJC Health Sys.*, 89 F.4th 1037, 1043 (8th Cir. 2023).

"Merely complying with federal laws and regulations is not 'acting under' a federal officer for purposes of federal-officer removal." *Maglioli*, 16 F.4th at 404. That includes private parties who are "subject to detailed regulations and whose activities are highly supervised and monitored[.]" *Id.* (internal quotation marks and quoted source omitted). If the defendant's relationship to the federal government sounds merely in "regulation, not delegation," the defendant fails the "acting under" requirement. *Watson*, 551 U.S. at 157.

"Government contractors are [the] classic example" of private parties who are acting under the federal government. *Maglioli*, 16 F.4th at 405. That is because they "help[] the Government to produce an item that it needs"—which, "in the absence of a contract with a private firm, the Government itself would have had to perform." *Watson*, 551 U.S. at 153–54. In other words, they "go[] beyond simple compliance with the law and help[] officers fulfill other basic governmental tasks." *Id.* at 153.

B

Penn argues that the Plaintiffs' allegations regarding Penn Medicine's patient portal involve conduct that occurred while Penn was acting under the federal government. Penn receives incentive payments from the federal government under the Program and avoids reductions in Medicare reimbursements, in part, because it operates Penn Medicine's patient portal. According to Penn, this relationship shows that

8

it is "fulfill[ing]" the federal government's policy and thus acting under it. App. 29. We disagree.

The federal government did not delegate any legal authority to Penn to operate a patient portal *on behalf of* the government. *See Watson*, 551 U.S. at 156. Absent private action, the federal government itself would not be operating any patient portal. *See id.* at 153–54; *Maglioli*, 16 F.4th at 405. When Penn operates Penn Medicine's patient portal, it is not doing the government's business; it is doing its own. *See BJC Health*, 89 F.4th at 1043. To be sure, Penn does advance the government's policy by operating a patient portal that meets certain objectives and measures under the Program. But that is mere compliance "with federal laws and regulations." *Maglioli*, 16 F.4th at 404. Advancing governmental policy while operating one's own business is not the same as executing a delegated governmental duty.

According to Penn, it is acting under the federal government because it has a contractual relationship with the government. In particular, Penn signed a written enrollment application with CMS to participate in Medicare, which in turn allowed it to participate in the Program.[3] But simply because a private party has a contractual relationship with the federal government does not mean that it is acting under that federal authority. *See, e.g.*, *City of Hoboken v. Chevron Corp.*, 45 F.4th 699, 713 (3d Cir. 2022) (companies that produced oil under government leases were not acting under the government because the leases did not "impose close federal control" and

---

[3] Penn also claims that its course of dealings with CMS constituted a contractual agreement.

9

the oil was not specifically produced for the government); *Maglioli*, 16 F.4th at 405–06 (nursing home did not act under the government by complying with CMS regulations, even though compliance was required by contract). We must look to the nature of the relationship between the private party and the federal government. *See Watson*, 551 U.S. at 152–54; *Maglioli*, 16 F.4th at 405. Here, that relationship demonstrates that Penn is not acting under the federal government in operating Penn Medicine's patient portals.

Penn also urges us to follow *Doe I v. UPMC*, No. 2:20-cv-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020). There, based on nearly identical facts to Plaintiffs' case, the district court concluded that UPMC acted like a government contractor in operating its patient portal and receiving payments under the Program. *Id.* at *6. We reject the court's holding in *Doe I*. A defendant acts as a government contractor when, for example, a manufacturer produces a product for the federal government, doing so "under the specific supervision of . . . the [government]." *Papp*, 842 F.3d at 810, 813 (finding that The Boeing Company was a government contractor in producing a military cargo plane for the military). But Penn's relationship to the federal government is nothing of the sort. It is not producing or operating any patient portal for the government; absent private action, the government itself would not provide this service.

In short, Penn fails to show that it was acting under the federal government for purposes of § 1442(a)(1). In reaching this holding, we join at least one of our sister circuits and many district courts that have addressed nearly identical issues. *See, e.g.*, *BJC Health*, 89 F.4th at 1044–47 (healthcare provider did not act under the federal government in creating and operating

10

its patient portal to participate in the Program); *Doe v. Washington Twp. Health Care Dist.*, No. 23-cv-05016-SI, 2023 WL 8438564, at *3–6 (N.D. Cal. Dec. 5, 2023) (same); *Doe v. Christ Hosp.*, Nos. 1:23-cv-27, 1:23-cv-31, & 1:23-cv-87, 2023 WL 4757598, at *6–9 (S.D. Ohio July 26, 2023) (same); *Valladolid v. Mem'l Health Servs.*, No. 23-3007, 2023 WL 4236179, at *7–12 (C.D. Cal. June 27, 2023) (same); *Doe v. Sarah Bush Lincoln Health Ctr.*, No. 23-cv-2170, 2023 WL 7690179, *3–7 (C.D. Ill. Nov. 13, 2023) (same); *Progin v. UMass Mem'l Health Care, Inc.*, Nos. 23-cv-10113, 22-cv-12022, & 22-cv-40154, 2023 WL 4535129, at *3–5 (D. Mass. July 13, 2023) (same); *Martin v. LCMC Health Holdings, Inc.*, No. 23-411, 2023 WL 4540547, at *3–5 (E.D. La. July 5, 2023) (same).

\* \* \*

Penn fails the second requirement under § 1442(a)(1) and is therefore not entitled to removal. The District Court thus lacked subject-matter jurisdiction and properly remanded the case to state court. For these reasons, we will affirm.